IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GILBERT DIAZ,

        Plaintiff,

v.                                                                                                                Civ. No. 00-862 JP/WWD

ALBUQUERQUE, NEW MEXICO POLICE DEPARTMENT
and APD OFFICERS RAY BACA, DON McGRATH,
INDIVIDUALS PERFORMING UNAUTHORIZED ACTS
WHILE ON OFFICIAL DUTY, AND OTHERS YET UNNAMED,
All Individually, Jointly and Severally,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

On April 16, 2002, Defendants filed a Motion for Summary Judgment Under the Doctrine of Qualified Immunity (Doc. No. 107). Defendants argue that "Plaintiff has failed so far to make any showing of the apparent unlawfulness of Plaintiffs temporary detention, nor has he cited any preexisting law suggesting its unlawfulness." Defs' Mem. in Supp. at 8. According to Defendants, these failures require the dismissal of Plaintiff's complaint under the doctrine of qualified immunity.

On June 5, 2002, at pre-trial conference attorney Stephen McIlwain represented the Plaintiff, attorney Kenneth Downes represented Defendant Don McGrath, and attorney Kathryn Levy represented Defendant City of Albuquerque and Defendant Ray Baca. Mr. McIlwain clarified the causes of action asserted in Plaintiff's complaint, as described in the order of June 12, 2002 (Doc. No. 131). I permitted the parties to file supplemental briefs on certain issues: (1) whether the length of Plaintiff's detention violated Plaintiff's rights under the Fourth Amendment,

(2) whether Officer McGrath's alleged theft of $200 from Plaintiff's wallet violated Plaintiff's rights under the Fourteenth Amendment, (3) whether Plaintiff's allegation that police officers made Plaintiff lie down on the floor and then stand facing the wall of the police station while being questioned was excessive force in violation of Plaintiff's rights under the Fourth Amendment, (4) whether Officer McGrath's comment to another officer about wanting to shoot Plaintiff when Plaintiff was released from police custody was excessive force in violation of Plaintiff's rights under the Fourth Amendment, and (5) whether Defendants are entitled to qualified immunity on those claims.

On July 12, 2002, after those issues were briefed, I held a second hearing with Mr. McIlwain, Mr. Downes, and Ms. Levy in order to address the factual record and applicable law. I confirmed what admissible evidence was present in the record and heard argument on all the issues. From that discussion I determined that Defendant's Motion for Summary Judgment should be granted because Plaintiff's claims are not supported by admissible evidence, and Plaintiff failed to demonstrate the existence of clearly established law that Defendants McGrath and Baca should have known they were violating.

*Background*[1]

Plaintiff and his family are "black Cuban Americans." Pls' Resp. at 11. On June 18, 1997, Plaintiff's brother, Carlos Diaz,[2] was involved in a fight with a gang of Hispanic males in front of his mother's trailer home in Albuquerque. During the fight, Carlos' sister emerged from the

---

[1] Because the Court is considering a summary judgment motion, the facts are construed in the light most favorable to Plaintiff.

[2] This opinion will refer to Carlos Diaz simply as Carlos in order to avoid confusion between Plaintiff, Gilbert Diaz, and his brother, Carlos Diaz.

2

trailer home carrying a gun. Sometime thereafter, shots were fired. Upon hearing gunshots, the gang disbursed, which permitted Carlos to seek shelter inside the trailer home. Because gang members were gathering outside the trailer home yelling for Carlos to come out, Carlos fled through the rear.

When Officer Ray Baca arrived at the scene he observed a male (victim) whose head was bleeding from a gunshot wound. A witness to the fight informed Officer Baca that after hearing a "bang," the witness heard the victim yell, "I'm shot." The witness then saw a black handgun in Carlos' hand. That information led the police to believe that Carlos had committed an aggravated battery.

After receiving a telephone call from his mother about the fight, Plaintiff arrived at the trailer home. Police officers confronted Plaintiff at the scene and told Plaintiff that they were looking for his brother, Carlos. Plaintiff's family members also told Plaintiff that the police wanted Carlos as a suspect in the shooting.

On June 19, 1997, the day following the shooting, Officer McGrath monitored the trailer home where the shooting took place. Officer McGrath still was looking for Carlos and the gun used in the shooting. Sometime around noon Officer McGrath witnessed Plaintiff driving a van out of the parking lot of the trailer home with a person who matched the description of Carlos in the passenger seat. The van headed east on Central Avenue traveling toward the mountains, away from the center of town and any police station. Because Officer McGrath was driving an unmarked car, he called for a marked police car to pull the van over. Once the van was stopped the passenger was identified as Carlos Diaz.

Plaintiff explained to the officers that they were headed to the police station so Carlos could make a report about the shooting. When law enforcement officers asked Plaintiff which police station they were driving to, Plaintiff could not provide any details. The police searched the van for the gun and had it towed. Plaintiff and Carlos were then taken to a nearby police substation for questioning about the shooting and the location of the gun. Plaintiff was held by the police for a total of approximately eight hours from the time the van was stopped until Officer McGrath returned Plaintiff to his mother's trailer home. Plaintiff was never formally arrested or charged with any crime. Although Officer McGrath arrested Carlos and charged him with aggravated battery, a jury acquitted Carlos of that charge.

*Legal Standard*

Once a defendant has asserted a qualified immunity defense through a summary judgment motion the plaintiff must satisfy a "heavy two-part burden." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). "The plaintiff must first establish that the defendant's actions violated a constitutional or statutory right. If the plaintiff establishes a violation of a constitutional or statutory right, he must then demonstrate that the right at issue was clearly established at the time of the defendant's unlawful conduct." *Id*. (internal quotations and citations omitted). If the plaintiff does not "clearly demonstrate" that his or her "heavy two-part burden" has been satisfied, the defendant is entitled to qualified immunity. *Id*. Only if plaintiff carries his burden of showing that defendant violated a constitutional or statutory right that was clearly established at the time of the offending conduct, does the burden shift back to the defendant, who must then demonstrate "that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Id*.

*Analysis*

Plaintiff first argues that his Fourth Amendment rights were violated when police arrested him and searched his van without probable cause to do either. Resp. at 2, ¶ 5. Defendants are willing to concede for the purpose of their motion that Plaintiff's detention constituted a *de facto* arrest. Defs' Mem. in Supp. at 10. However, Defendants argue that probable cause existed for Plaintiff's arrest and the search of the van.

Warrantless arrests are "permissible when an officer has probable cause to believe that the arrestee committed a crime." *Baptiste v. J.C. Penny Company, Inc.*, 147 F.3d 1252, 1256 (10th Cir. 1998). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Id*. If a "reasonable officer could have believed that probable cause existed to arrest the plaintiff," the arresting officer is entitled to immunity from suit even though it is later determined that the arresting officer was mistaken. *Id*. "The primary question . . . is whether, based on the facts and circumstances known to [the officer], a reasonable officer could have believed there was probable cause to arrest [plaintiff]." *Id*.

Under the uncontroverted facts a reasonable officer could have believed that probable cause existed to arrest Plaintiff. When Officer McGrath stopped Plaintiff's van, in which Carlos was a passenger, Officer McGrath knew that Plaintiff was aware that the police wanted Carlos as a suspect in the shooting. Although Plaintiff told police officers that he was transporting Carlos to the police station, Plaintiff could not provide the address of any particular station or tell them how he was going to find one. Moreover, Plaintiff was driving away from the City, not toward a

5

police station. Given Plaintiff's dubious explanation and his driving in a direction that was inconsistent with his explanation, Officer McGrath was not required to believe Plaintiff. *Baptiste*, 147 F.3d at 1259 (observing that police officers "may weigh the credibility of witnesses in making a probable cause determination"). Even during his deposition testimony years later, Plaintiff could not provide greater detail about his destination that day. Plaintiff testified that "if the time came for me to turn around and bring that van back to take it to the police station I would have done so." Pl's Resp. Ex. 1, tr. p. 64-65. Based on those undisputed facts, Officer McGrath could have reasonably believed that Plaintiff was acting as an accessory to Carlos' attempt to evade apprehension and/or arrest.[3] Thus, Officer McGrath had probable cause to arrest Plaintiff based on his reasonable belief that a crime was being committed by both Plaintiff and Carlos. Once the occupants of the van were arrested a search of the van's interior was permissible. *U.S. v. Price,* 265 F.3d 1097, 1104 (10th Cir. 2001) (holding that when a police officer makes a lawful custodial arrest of the occupant of a vehicle, the interior of that vehicle may be contemporaneously searched, citing *New York v. Belton*, 453 U.S. 454, 460 (1981)).

Nonetheless, Plaintiff argues that he was arrested and his van searched in part out of malice because he is a "black Cuban American." According to Plaintiff, the "objective qualified immunity test" is "untenable" when the underlying constitutional tort includes an intent element.

---

[3] Under NMSA 1978, § 30-1-13 (1972), a "person may be charge with and convicted of the crime as an accessory if he procures, counsels, aids or abets in its commission and although he did not directly commit the crime and although the principal who directly committed such crime has not been prosecuted or convicted, or has been convicted or a different crime or degree of crime, or has been acquitted, or it a child under the Children's Code."

According to the evidence, the underlying crime could have been evading an officer, NMSA 1978, § 30-22-1 (1981), which consists of "intentionally fleeing, attempting to evade, or evading an officer of this state when the person committing the act of fleeing, attempting to evade, or evasion has knowledge that the officer is attempting to apprehend or arrest him."

Pl.'s Mem. in Supp. of Resp. at 10. Although certain claims brought under 42 U.S.C. § 1983 require an analysis of the state actor's subjective state of mind, causes of action under the Fourth Amendment generally do not. Just this term the Supreme Court affirmed that it has "been unwilling to entertain Fourth Amendment challenges based on the actual motivations of individual officers." *U.S. v. Knights*, 122 S.Ct. 587, 593 (2001) (citing *Whren v. United States*, 517 U.S. 806, 813 (1996)). Therefore, Plaintiff cannot defeat Defendants' assertion of qualified immunity by arguing that the arresting officers held or displayed a contempt for black Cuban Americans. As stated in *Whren*, "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." 517 U.S. 806, 813. In addition, Plaintiff has not presented any admissible evidence by affidavit, deposition testimony, or otherwise, to support his allegations of malice.

Plaintiff has not offered any admissible evidence that reasonably identifies Officer McGrath as the person who allegedly stole Plaintiff's $200. Even if he could, Plaintiff had available post deprivation remedies to recover his $200 under state tort law. Plaintiff cannot create a federal constitutional due process claim by refusing to utilize available remedies under state law. *Davis v. Schifone*, 185 F. Supp. 2d 95, 102 (D. Mass 2002).

Similarly, Plaintiff failed to provide admissible evidence of how long he was made to lie on the floor or stare at the wall during his detention at the police station. Additionally, Plaintiff has not pointed to any legal authority that would have placed Defendants on notice that as of June 19, 1997, having Plaintiff lie on the floor or face a wall for an unspecified length of time amounted to excessive force in violation of the Fourth Amendment.

Likewise, Officer McGrath's statement to a fellow police officer "I would like to take out my gun and kill them," said at the time Plaintiff was released from custody, Dep. of Gilbert Diaz,

7

December 18, 2001, p. 93, ll. 7-8, does not establish a claim of excessive force under the Fourth Amendment. Since some physical force is permitted without offending the Fourth Amendment, a comment of this nature, even if it is construed as a threat, would not violate the Fourth Amendment. *Cf. Saucier v. Katz*, 533 U.S. 194, 209 (2001) (stating that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."); *see Giese v. Wichita Police Dept.*, 69 F.3d 547, 1995 WL 634173, *2 (10th Cir.1995) ("Verbal threats during questioning also do not constitute the use of excessive force.") (unpublished opinion). Even if Officer McGrath's statement to a fellow officer could be considered an actual threat to Plaintiff, Plaintiff cited no authority that Officer McGrath should have known that threatening language of this nature would be considered a Fourth Amendment violation as of June 19, 1997.

As a general rule, a person who is arrested without a warrant may be held for up to 48 hours before a judicial determination of probable cause is made. *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991). Detentions for shorter periods of time are constitutionally impermissible only if they are unreasonable. *Id*. However, in analyzing claims for unreasonable detentions "courts must allow a substantial degree of flexibility" in the conduct of law enforcement officers. *Id*.

Plaintiff's allegation that he was held for approximately eight hours is presumptively reasonable under *County of Riverside*. Considering the time consumed by (1) questioning Plaintiff and Carlos during the stop of the van, (2) waiting for the tow truck to arrive and remove Plaintiff's vehicle from the scene of the stop, (3) transporting Plaintiff and Carlos to the police station, (4) interviewing Plaintiff's brother Carlos, (5) taking Plaintiff back to his mother's trailer

home, and (6) waiting for the search of the trailer home to be completed before Plaintiff was released, I find that the approximately eight hour detention here was not unreasonable under *County of Riverside*.[4] Plaintiff has not cited to any authority that would imply that a detention under the facts presented here would be impermissible. Because Plaintiff has failed to demonstrate that as of June 19, 1997, his detention was clearly unreasonable under established law, the defense of qualified immunity applies to this claim also. *Medina*, 252 F.3d at 1128.

Plaintiff alleged in his Complaint that Defendants violated numerous other federal rights apart from the Fourth Amendment.[5] However, Plaintiff did not brief these claims when confronted with Defendants' Summary Judgment Motion. Therefore, Plaintiff abandoned these claims. *Imperial v. Suburban Hosp. Ass'n, Inc.*, 37 F.3d 1026, 1031 (4th Cir. 1994) (holding that when a plaintiff has "made no overture to the district court to suggest that he had a continuing interest in pursuing [a claim] which would survive the immunity defense" the claim has been

---

[4] According to Plaintiff, the police stopped his vehicle at approximately noon on June 19, 1997. Dep. of Gilbert Diaz, December 18, 2001, p. 70, l. 9. Plaintiff admits that he saw his car being towed away, *id.*, p. 75, l. 22, which took place at 4:45 p.m. Pl.'s Resp. Ex 3. Thus, Plaintiff probably spent less than four hours at the police substation, and apparently most of that time was consumed by Officer McGrath's interrogation of Carlos. Although a district judge for the District of New Mexico has found that a five hour detention at a police substation may, under different facts, be unreasonable, *Hatheway v. Theis, et al.*, Civ. No. 00-1200 MCA/RLP (Doc. No. 69), the detention there was without probable cause, whereas under the facts of this case police officers had probable cause to arrest Plaintiff.

[5] Plaintiff's Complaint for Damages asserts claims under the following theories: conspiracy to violate rights secured by 42 U.S.C. §§ 1983, 1984, 1985, 1986, violations of 42 U.S.C. § 1983, violations of 18 U.S.C. §§ 241, 242 & 1505, infliction of severe emotional distress, negligent violation of civil rights, violations of the VI, V, XIII & XIV Amendments to the U.S. Constitution, false arrest and unlawful detainment, and kidnaping to violate civil and constitutional rights.

abandoned). Although Plaintiff did argue in his briefs that his rights under 42 U.S.C. § 1985(3) were violated, I find that claim to be without merit.

On June 20, 2002, Plaintiff filed a Motion and Memorandum for Discovery Sanctions and Order to Show Cause (Doc. No. 133). Plaintiff argues that Defendants "planned" to obstruct justice by preventing discovery and service of process in this case. Plaintiff contends that (1) Officer Baca's denial under oath that he was involved in Plaintiff's arrest, (2) the failure of the Albuquerque Police Department to provide McGrath's apartment number, (3) McGrath's failure to answer certain questions at his deposition without being able to review police reports to refresh his recollection, and (4) McGrath's submission of an affidavit after his depositions were completed are evidence of "a concerted effort" to thwart Plaintiff's suit. Doc. No. 134 at 8. I find no evidence of concerted action and/or a conspiracy to derail Plaintiff's suit.

Addressing in turn Plaintiff's accusations, I note that Plaintiff has never taken Officer Baca's deposition to find out whether his testimony was, in fact, wrong, or was an innocent mistake (which is plausible given the intervening years) or was something more culpable. Although it is unlikely that the Albuquerque City Legal Department did not know Officer McGrath's apartment number, having just sent someone to McGrath's apartment to secure an affidavit, Plaintiff does not explain why he waited "some months" to issue a subpoena duces tecum to the apartment manager for the information. Plaintiff has not demonstrated that either defense counsel or the City's legal department had something to do with Officer McGrath moving to Tennessee during the "some months" Plaintiff waited to subpoena the information. Finally, Plaintiff's expectation that Officer McGrath would have total recall of the June 1997 events during his December 2001 deposition, without referring to police reports, is unreasonable. The

fact that Officer McGrath was able to produce an affidavit after the police reports were made available to him for a comprehensive review is not surprising. Plaintiff has not pointed to any inconsistency between Officer McGrath's affidavit and his deposition testimony that suggests that Officer McGrath purposefully withheld information during his deposition. Under the circumstances presented here, sanctions are unwarranted.

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment Under the Doctrine of Qualified Immunity (Doc. No. 107) is GRANTED; Plaintiff's Motion and Memorandum for Discovery Sanctions and Order to Show Cause (Doc. No. 133) is DENIED; and all other pending motions in Civ. No. 00-862 JP/WWD are denied as moot.

_____
CHIEF UNITED STATES DISTRICT JUDGE